AMERICAN-LAFRANCE, INC., *v.* CITY OF PHILADELPHIA.

(En Banc.   Nov. 28, 1938.)

[184 So. 620.   No. 33280.]

**Wilbourn, Miller & Wilbourn,** of Meridian, for appellant.

Earl Richardson and James M. Mars, both of Phila-
delphia, for appellee.

214

Argued orally by **R. E. Wilbourn,** for appellant.

**Griffith, J.,** delivered the opinion of the court.

On August 27, 1929, appellant made a written proposal to appellee's mayor and board of aldermen to furnish to appellee an American-LaFrance Six Cylinder Buick Fire Truck with its accessories and equipment at the sum of $5,500 F. O B. Philadelphia, Mississippi, payments to be made $825 cash on delivery, and the remainder in five annual equal payments with six per cent interest per annum from date. Along with this proposal, and as a part thereof, there were elaborate specifications in detail of the machinery and equipment to be furnished, these specifications covering some twenty pages of the present transcript.

This proposal and the said specifications having been formally filed with the municipal board, the board, at its regular meeting on September 3, 1929, made and entered the following order:

"The matter of buying a fire truck and a Road Machine came on to be heard by the Board, and after careful consideration of the needs for better equipment for the purpose of abating and extinguishing fires and also the need of a better machine for the building and maintenance of the streets of the city, the Board by a unanimous vote ordered the clerk to advertise for bids on one American-LaFrance Six Cylinder Buick Fire Truck with pump attachments; and also one Austin Western Road Machine."

At the next meeting of the board on October 2, 1929, the following order was entered:

"The matter of receiving and opening all bids on fire trucks advertised for by the City came on to be heard and considered, and after a careful consideration of bids, on motion of B. M. White, seconded by E. S. Cole, it was

ordered that the City purchase one American-LaFrance Six Cylinder Buick Fire Truck with pump attachments.''

These are the only orders respecting the making of the contract which appear on the minutes of the mayor and board of aldermen, and were not sufficient to effectuate a valid sale, requisite elements having been omitted from the recitals of the minutes, as pointed out in Kidder v. McClanahan, 126 Miss. 179, 88 So. 508. Nevertheless the mayor in the name of the city signed the contract; the engine and equipment were delivered on or about November 1, 1929, were examined and were found in every respect to be according to the specifications; the cash payment was made, and the notes for the deferred payments were signed and delivered for the city by the mayor; and the city entered upon the use of the machinery and equipment, and has ever since continued so to use it.

The first two notes, principal and interest, were paid, and the interest on the third note. But the principal on that note and the principal and interest on the fourth and fifth notes have been, since their due dates, at all times in default. Repeated efforts by appellant to make collection in whole or in part were made, but without success, although throughout all the time thereof the city made no claim that there was any imperfection or illegality in the contract or that the machinery failed in any way to comply with the specifications aforesaid.

Finally on October 27, 1936, appellant filed its bill to foreclose its purchase money lien and later its amended bill, praying in the alternative that it have a decree for the repossession of the machinery and for a reasonable compensation for its use. To this bill the city interposed demurrers which were sustained and the suit was dismissed.

Inasmuch as no valid legal contract was ever consummated, the city is not indebted to appellant for a purchase money demand either for the amount stated in the proposed contract or upon a quantum valebant, and thus the

remaining issues are those presented in the alternative. The real questions before the court are, therefore, these: When the alleged sale of machinery to the city is void for want of formal compliance with legal requirements, but the city retains and uses the property, may the alleged seller recover (1) the property, and (2) a reasonable compensation for its use?

Before proceeding further upon that specific inquiry, we must eliminate from the field of discussion the three following situations: First, because these are not before us under the present facts, and, second, because they are no longer to be considered as fairly debatable. These are: (a) Where there has been in the transaction actual moral corruption, both on the part of the seller and of the officers or agents of the municipality, or actual corruption on the part of one side with the knowledge and acquiescence of the other. In such a case the court, as a general rule, will extend no aid but will leave the situation as it is found. (b) Where the municipality is not authorized in any manner or at any time to make the pretended purchase, where the transaction is not within an object authorized by law under any circumstances, in which case the seller, in the absence of actual corruption, may repossess the property but nothing for its use. And (c) where the municipality is not authorized in any manner or at any time to lease the property in issue, in which case, in the absence of actual corruption, the lessee may repossess the property but nothing for its use. And in the three situations dealt with in this paragraph it is immaterial that the purported contract may have been executed with all the formalities and in the observance of every detail which would be required in a lawful contract. See, for instance, Edwards House Co. v. City of Jackson, 138 Miss. 644, 103 So. 428, 42 A. L. R. 625.

Coming then to the question before us, thus more precisely disclosed, to-wit, Where there is no actual corruption, and the transaction is within the objects au-

thorized by law, but the contract is void for want of compliance with legal requirements in the making thereof, may the alleged seller recover (1) the property and (2) a reasonable compensation for its use? As to the recovery of the property in such a case, there seems to be no division among the authorities. The sales contract being invalid, the title has never passed from the seller, and he is permitted to recover that to which he has the title, so long as within the reach of the processes of replevin, or other appropriate action or suit.

It is upon the second feature of the stated question that the courts have widely differed and have ranged themselves and the rule to which they adhere into three groups, which may be approximately defined as follows:

I. Those that broadly hold to the doctrine of implied liability on the part of the municipality to do justice and to make a fair compensation for the use of property which it has received and used, under the same rules applicable as between private persons, whatever may be the extent of the invalidity of the contract, or even when there has been no contract of any kind at all. They say that the obligation to do justice rests alike upon all persons whether natural or artificial, and that it would no more be permissible that a municipality may accept or take the property of another and use it for a legitimate municipal purpose and benefit, and then contend it owed nothing for that use because of the absence of a valid, express contract, than it would be for a private person or private corporation to do the like.

II. Those that hold, to state it only approximately and so far as necessary to the purpose of this case, that when there has been an entire fairness in the dealings between the seller and the municipal officers and agents, and the transaction has throughout been conducted in the open, in such manner that any of the public within the municipality might at any time see, or upon inquiry may know, in truth, all that is or has been going on

about it; when all those substantial steps have actually been taken, which are designed in their requirement to avert, so far as reasonably practicable, all opportunities for favoritism or extravagance or of temptations toward unlawful private profit, and when the only defects in the contract are in omissions in a technical aspect, as for instance, to make a perfect record of what has been done or is to be done, the seller may recover a reasonable compensation for the use of this property,—although he can recover nothing for the purchase price either as stipulated in the abortive contract or upon a quantum valebant, the reason for the latter being that the title has never passed.

III. Those that hold that when for any reason, whether substantial or merely technical, the contract is not legally valid, the seller may not recover for the use of the property, and, in any event. all that he can get is the repossession of the property. The courts which are within this group point out that the members of the public, as they go about their daily occupations, have not sufficient time to keep constant watch upon their municipal officers and agents, and that therefore everything done by them in relation to municipal contracts of purchase or sale shall be done openly not only, but that every step taken or necessary to be taken shall be definitely spread upon the municipal minutes, and in every essential detail. so that thereby there shall be reduced to the last possible minimum the aforementioned opportunities for favoritism or extravagance, or of temptations toward unlawful private profit; and that these considerations in the public interest outweigh the argument of an implied obligation to pay what the use of the property is justly worth.

If we were obliged to align ourselves either with the first or with the third of the aforesaid groups we would unhesitatingly choose the third group. But we think that those of the second group, in their holdings, have

been sufficiently cognizant of the objects and purposes, and have required a reasonable measure of accomplishment thereinabout, for which the third group contends, and at the same time are enabled to give a permissible recognition to the principles of common justice which so strongly actuate the first group; and we therefore concur with the second of said groups.

And so we align ourselves not only as a result of an examination of the leading cases in other states, but also because it would seem that our court is already committed to that course by the decision in Crump v. Board of Sup'rs of Colfax County, 52 Miss. 107, 111. It is true that in that case the allowance of reasonable compensation was for the use of real estate, but we can perceive no basis for a difference as between real estate and personal property. And strange to say, although the precise question which we are herein deciding has arisen in numerous cases in other jurisdictions, the case, Crump v. Board of Sup'rs of Colfax County, supra, is the only one in point in this state. There have been many in this state, and particularly as against counties, where suit has been pressed for the purchase price, either as fixed in the abortive contract or on a quantum valebant, and as if title had passed, but none for a reasonable compensation for the use, other than the case last cited. The case, Edwards House Company v. City of Jackson, supra, was for rent of a strip of land for a street, under an express contract, but as already pointed out, that case went out of court on the ground that the city was not authorized to make a contract for the lease of a street under any circumstances or at any time,—it was not within the field of any allowable municipal lease contract.

Appellee contends that another and the chief difficulty with appellant's case is that the alleged contract for the purchase of this fire engine and its equipment was an attempt to create or incur an interest-bearing debt without the authorization of the electors at an election called for that purpose, and appellee invokes the provisions of

Section 5978, Code 1930, Chap. 325, Laws 1920. And it might be said that this omission was such a substantial defect, or want of such a vital step, as to take the case out of the second group to which we have hereinabove referred. Conceding that this record sufficiently shows that no election was held, and conceding that the debt here attempted was one within said Section 5978, and conceding that the stated omission would take the case out of the second group, if the only authority of the municipal board was to purchase the equipment, with no authority to lease,—these concessions to be taken for the sake of the discussion and not as decision,—we would still have the question whether the municipal board was authorized to lease this fire fighting equipment.

The general powers of municipalities in respect to fire fighting equipment is contained in Section 2428, Code 1930, brought forward from previous codes. The language of that section is broad and comprehensive. We fail to find any warrant within it which would justify us in holding that there the only power of performance is by outright purchase and that leases are excluded. So far as we know, it may have been deliberately deemed wise to allow the latitude of a lease or leases. The rule in such a situation is that, unless the statute contains some express or implied restraint, the municipality has a reasonable discretion in the choice of the means or methods for exercising the powers given it for a public purpose. 19 R. C. L., p. 770; 43 C. J., p. 249; 1 McQuillin Munic. Corp. (2 Ed.), pp. 964, 965. And since the only monetary liability to which we are holding the municipality here is one for a reasonable compensation for the use of the property until such time as it shall be delivered up to the seller, the status of the city is no more than as a lessee,—not a debtor in an interest-bearing debt, as contemplated by said Section 5978, Code 1930,—and it was not necessary to submit to the voters the question of making a lease of the equipment, or of allowing the municipality to be held to the obligations of

a lessee. And at this point we will add, that there may be no misunderstanding, that the City will be entitled to credit, upon the lease compensation, for all sums which it has heretofore paid, even though paid as purchase money.

We have not overlooked the argument by appellee that if a municipality has no power to lease a street, as was held in Edwards House Co. v. City of Jackson, supra, it can have none to lease a fire engine; but the very nature of the requisite dominion of a municipality over its streets precludes an implication of power on its part to lease a street, while no such inhibition adheres in property such as a fire engine and its accessories and equipment. Section 2391, Code 1930, gives the broad power to a municipality to purchase and hold real estate and personal property. Under such a broad power, it is a general rule of interpretation that there is embraced and included the lesser power to lease,—see authorities and cases cited in City and County of San Francisco v. Boyle, 195 Cal. 426, 433, 233 P. 965, referred to as a leading case in 3 McQuillin on Munic. Corp. (2 Ed.), p. 714, and in 43 C. J., pp. 1329, 1330,—unless, of course, as already said, there is in the very nature of the use and control of the property an implied inhibition against a lease.

It sufficiently appears from what we have said, and we now directly so state, that, as the record now stands before us, we are of the opinion that the transaction falls within the second group of holdings of which we have hereinabove given an approximate outline, and that in consequence the demurrers should have been overruled. Reversed and remanded.

**Ethridge, J.**, dubitante.

CONCURRING OPINION.

**Anderson, J.**, delivered an opinion specially concurring.

I concur in the above opinion, notwithstanding that it appears to me to be squarely in conflict with Amite

County v. Mills, 138 Miss. 222, 102 So. 465, 737, and Smith County v. Mangum, 127 Miss. 192, 89 So. 913. I think it overrules those decisions, and that they ought to be overruled. My dissenting opinion in the Mills Case expressed my views. I have had no reason to change them. I cannot reconcile those cases with Crump v. Board of Sup'rs of Colfax Co., 52 Miss. 107. Here is the way our cases stand now; a valid lease contract may be made; the one made is void. Nevertheless, the municipality is liable for a reasonable rental. On the other hand, although a valid contract of purchase may be made, and the one made is void, there can be no recovery for the actual value.